IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

07-493-

RAYMOND D. DEMBY JR.
              PETITIONER.

          V.

WARDEN THOMAS CARROLL,
STATE OF DELAWARE

CASE No. I.D. 951100-7872

MEMORRADIM OF LAW IS SUPPORT
OF PETITION FOR WRIT OF HABEAS CORPES



FILED

AUG -9 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Scanned

7/27/07

Respectfully Submitted
Mr. Raymond Demby
#218628
1181 Paddock Road
Smyrna, Delaware
              19977

In support of Petition.........

1.On May 9, 1996 the Defendant was sentenced to 30 years at level 5. The first 15-year's mandatory for the offense of delivery of a narcotic schedule controlled substance.

2. Defendant sentence is illegible for the following...

## Supporting Facts

1. On November 6, 1995 the grand jury in the Superior Court of the State of Delaware in and for Kent County returned an indictment. A true bill charging Raymond O. Demby Jr. of a narcotic schedule II controlled substance of delivery . A felony in violation of Title 16 Section Statute 4751 of the Delaware Code alleging.... See Exhibit Page 1.

2. Raymond O. Demby Jr. on or about the 13th day of July 1995 in the County of Kent State of Delaware, did knowingly and unlawfully delivery Cocaine, a narcotic schedule II controlled substances classified under Title 16 Delaware Code Section 4716(b)(4).

3. On May 9, 1996 the Late Honorable Haile L. Alford in the Superior Court of Kent county, the jury returned a verdict of guilty as charged.

4. On May 9, 1996 the Late Honorable Haile L. Alford imposed sentenced as follows:

5. The Defendant Raymond O. Demby Jr. is placed in the custody of the department of Corrections at Supervision Level V for a period of 30 years. The first 15 years of the sentence is mandatory pursuant to Title 16 Delaware Code Section 4763 (A)(3). See Exhibit Page 2.

## Legality of Sentence

6. Defendant Raymond O. Demby Jr. respectfully challenges the legality of his sentence on one major ground. Demby asserts that the Trail Court erred as a matter of law by imposing on him an additional enhanced penalty pursuant to Title 16 Delaware Code Section 4751 where the court lacked no authority or power, and lacked jurisdiction to impose an enhanced penalty in this particular case.

7. Because the court clearly shows that Defendant Raymond O. Demby Jr. was indicted by a grand jury to section Statute 4751 and not Statute section 4763(A)(3).

8. The state had every opportunity to amend an indictment prior to a verdict, as long as no additional or different offense is charged and if substantial rights of the Defendant not prejudged if the state wanted to correct or amend an indictment. See Exhibit Page 3.

9. Title 16 of the State of Delaware code Section Statute 4751 (d) provides in pentenent part. (d) where an individual is convicted of violation of section (A) subsection (B) subsection (C) of this section and the Attorney General may move to sentence the Defendant as a non-addict, the court shall conduct a hearing at which the Attorney General shall have the

1

burden of proof by preponderance of the evidence that the Defendant is a non-addict. If the court after the hearing is satisfied that the Defendant is and was at the time of the offense not addicted to controlled substances, then the following enhanced penalties shall apply.

1.) For the first violation of this section Statute a mandatory minimum sentence of six (6) years to be served at level V. See Exhibit Page 4.

2.) For the second on subsection subsequent violation of this section a mandatory minimum sentence of twelve (12) years to be served at level V. See exhibit Page 4.

10. In the present case, Defendant Rayment O. Demby Jr. was sentenced to an enhanced penalty for violation of Title 16 Delaware code Section 4751 without the benefit of the mandatory hearing required by section 4751(d) before any enhanced penalty may be applied.

   State vs. Rodriquez 1993 WL 189548 Delaware Supr. 1993 held that where the Attorney general fails to meet his requisite Burden of Proof at the required hearing that the Defendant is not addicted to a controlled substance no mimimun mandtory sentence other wise applied to the sentencing of the Defendant as an addict for possession with intent to deliver cocaine. See Exhibit Page 5.

11. Rodriquez V. State 1193 Wl 189548, the State argued that it had met it's requisite burden under DE/C Sec. 4751(d) and thus the Defendant should be sentenced as – non-addict.

12. In response Defendant challenge the constitutionality of sentence as a non-addict and argues that the State has not other wise meet it's burden of proving by preponderance of the evidence, the Defendant's non-addict status and the state's motion was denied Rodriquez vs. state See Exhibit Page 5.

13. And the record clearly shows the absence of Demby's mandatory hearing required by 16 De/c Sec.4751 guidelines on the court docket sheets See Exhibit Page 6.

### Intent of General Assembly

14. Title 16 of the Delaware Code Section Statute 4751(d) and section Statutes 4763(A)(3) is intended to provide or promote the legitimate societal goal of more severely punishing persons for serious drug crimes when it is shown that a Defendant is a non-addict.

15. Cf. State V. Hefton. Del Supr 586 A2d 196.1199.1200 (1988) concluding that the legislation atmosphere in which 63 Delaware laws C. 134 ( trafficking Status) was enacted indicates the General Assembly's intent to defer the distribution of drugs by creating enhanced penalties for certain drug offenses.

16. Such persons who pray upon society through illicit involvement in drug activity when under no compulsion to do so by virtue of drug addiction deserve society's contempt and it is well

within the province of the legislative to mandate that <u>such offenders be sentenced more severely than those offenders who are truly addicts.</u>

17. This the practical effect of the application of section 4751(d) or 4763 (A)(3) to Defendant is that the court would require to sentence him to serve a minimum mandatory sentence " if the state requires hearing that the Defendant is a non-addict and deserving of an enhanced penalty. <u>See Exhibit Page 7.</u>

18. The mandatory hearing required by 16 Del C. Sec. 4751 (d) to determine a Defendant's status before applying an enhanced penalty is remarkably similar factually to Delaware habitual criminal Statute under Title II Del Code Sec. 4214 and 4215 what provides the court with procedures similar to that of sec. Statute 4751(d).

19. The similarities between section 4215(d) and 4751 (d) apparent both provide that the Attorney shall move after conviction but before sentencing for a hearing to determine possible enhancement of a sentence based on the status of the Defendant. <u>See Exhibit Page 8</u>

20. The State never afforded Raymond O. Demby Jr. the benefit of the hearing mandated by Title 16 Del.Code Sec. Statute 4751(d) to determine Demby's status as an addict or non-addict.

21. In this present case, the trail court never afforded Defendant Raymond O. Demby Jr. the opportunity intended by the General Assembly to present any evidence demonstrating his use on addiction to controlled substances.

22. The State said it was their prerogative to forego attempting to show Demby's was a Non Addict. <u>See Exhibit Page 9</u>

23. The Superior court sentenced the Defendant to 30 years level 15 suspended after 15 years for decreasing levels of probation under statue 4763. A different statue from which the Grand Jury indicted and convicted and found guilty at trail. Hamilton VS. state 285A2d 807) <u>See Exhibit Page 10.</u>

24. The state argues that there was no illegality in the Defendant 1996 sentence for cocaine delivery and was not required to seek sentence under 16 Del. C. subsection statue 4751. <u>Stating that Campbell V. State controls</u> this issue because Supreme court ruled that because Campbell was convicted under statue 4763 (A)(3) he was not entitled to relief under statue 4751(d). <u>Exhibit Page 11.</u>

25. <u>Unlike Demby's conviction under statue 4751 where the Defendant was indicted by a grand Jury and convicted at trail of this Title 16 Del. C. statue 4751 not statue 4763(A)(3) where the Defendant's due process was entitled to the mandatory hearing required by law in which both are govern by the two sentencing schemes statues under chapter 47</u> in a Grand Jury indictment, when an enhanced sentence is required Hamilton V. State 205 A2d807). Title Supreme Court held that where Defendant was originally indicted for assault with intent to

commit murder; and conference between opposing attorney's resulted in agreement to plea of simple assault under Statute authorizing imprisonment for term as court in it's discretion might determine, and Defendant entered plea of guilty there to statue prescribing maximum incarceration period of 3 years for assault, limited the sentence to be imposed, and 20 years sentence was invalid and sentence reversed and case remand . See Exhibit Page 10.

26. The sole purpose of these two statues provided by chapter 47 is to stop the state from abusing the discretion of law for any defense under statue 4751 and statue 4763 Hinkle 6 Storey 35, 189 A2d452. This is why the law now deleted statue 4763(A)(3) was vacated. Because of the abuse of the law provided by statue 4763(A)(3) of chapter 47.

27. The State argues that there was nothing improper in the Prosecutor's choice in this regard, but contradicts the whole argument, stating that while the Superior Court May 9, 1996 sentence order does not specifically identify what aggravating or mitigating circumstances arise to receive or make a judgement for an enhanced sentence.

28. Then how could the State move to authorize the request that the Defendant be imposed to a different statue than which the Defendant was not indicted or convicted at trail of this Statute 4763 ?. See Exhibit Page 12.

29. If Campbell controls this issue, Campbell could not seek relief or was not authorized to seek relief under the statue 4751(d) that Demby was indicted and convicted of at trail. Because Campbell was indicted and convicted of Statute 4763(A)(3) and Demby's case was the total opposite of Campbell's.

30. Then how can Campbell control both sentencing schemes under Chapter 47? If Demby was indicted and convicted at trail under 4751 and the State had every opportunity to amend an indictment before a verdict was reached to specify that if convicted under Statute 4751, he could receive Statute 4763 for enhanced sentence? Because he had a past conviction for A PLEA agreement under Statute 4751 in 1989. But the State failed to amend the indictment before a verdict was reached.

31. Then how could the State authorize that Demby be sentenced to Statute 4763(A)(3) if Campbell was convicted at trail under Statute 4763(A)(3) and campbell controls this argument, then it would be apparent Demby would control his agreement being indicted and convicted at trail under Statute 4751 See Exhibit Page 4.

32. Since Campbell was convicted under Statute 4763(A)(3) and had to be sentenced under Statute 4763(A)(3), guidelines because he was convicted of that Statute then what authorized the state not to follow the same instructions of Chapter 47 sentencing scheme in Demby's case?

33. The purpose of the Statute 4751 and 4763 govern the State from abusing the discretion to chose what alternative sentencing scheme the State which to present at trail. Hinckle V.State Del Supr 189 A2d 432.

34. This is why Superior Court may 9, 1996 sentence order does not argue or specifically identify an enhanced sentence under these two Statute, because they are governed by a Grand Jury indictment under Chapter 47 Statutes for enhanced penalties after conviction Campbell V. State Supreme Court rule.

35. Demby's motion for trail illegal sentence must be vacated on the grounds that the State violated the Defendant's Due Process Rights by not providing him the mandatory hearing under 4751. Demby, who was at the time of his arrest a drug user, to receive an enhanced sentenced under the now deleted Statute without having the knowledge that taking a plea agreement under a different Statute from the guidelines of the Statute he was indicted and convicted of at trail.

   TurnBall V. Fink 668A2d 1370 Del. Supr.

36. TurnBall V. Fink 668A2d 1370 Del. Supr. When a court will attempt to harmonize two potentially conflicting Statutes dealing with the same subject. If they cannot be reconciled, however the specific Statue must prevail over the general. This is why the now deleted Statute does no longer exist.

37. How can Campbell control this issue when in fact Supreme Court ruled that because Campbell was convicted and indicted under Statute 4763(A)(3) that is now deleted. He could not seek relief under his secondary Statute 4751 which is the Defendant's Demby's primary Statute 4751 that Demby was indicted and convicted of at trail without the knowledge or benefit of the mandatory hearing required by Chapter 47 of Statute 4751(d).

38. In this present case, the absence of the mandatory hearing required after conviction but before sentencing under Statue 4751 violated the Defendant's Due Process Rights by not allowing the Defendant a fair trail State V. Rodriquez 1993 WL 189598 Supr. See Exhibit Page 6 .

39. It is manifested on the face of Demby's sentence that his sentence is illegal, and this motion is with merit because the issues presented are controlled by settled Delaware law under Chapter 47 subsection Statute 4751, and to the extent that Judicial Discretion was abused and the Defendant's Due Process Rights was violated.

40. There is illegality in the sentence of Demby's conviction sentence and wherefore Petitioner Raymond O. Demby Jr. respectfully pray that this Honorable court will vacate this sentence and grant the Defendant relief, and release him on that sentence for a Statute of an enhanced penalty that has been deleted. The Defendant has already served 11 years of that sentence. And request to just be released on that sentence.

Respectively Yours

Raymond O. Demby

5

STATEMENT OF FACTS

On July 13, 1995 Raymond O. Demby, Jr., aka Raheem Love, sold cocaine to two undercover New Castle County Police Detectives, Michael Smith and Christina Caruso, in the City of Dover. Demby v. State, 695 A.2d 1127, 1129-30 (Del. 1997)(en banc). After his grand jury indictment on November 6, 1995 (B-1) for the offense of delivery of cocaine in violation of provisions of 16 Del. C. § 4751(a), Demby was convicted on March 11, 1996 of the 1995 drug delivery following a jury trial in Kent County Superior Court. (B-2). Demby, 695 A.2d at 1129. The Superior Court on May 9, 1996 sentenced Demby to 30 years Level V imprisonment, suspended after the 15 year minimum mandatory term required by 16 Del. C. § 4763(a)(3) for 15 years of decreasing levels of probationary supervision. (B-6). Following an en banc proceeding on direct appeal this Court on June 27, 1997 affirmed Demby's conviction and sentence. Demby, 695 A.2d at 1129.

In 1998, 1999, and 2002 Demby sought post-conviction relief in the Superior Court pursuant to the provisions of Del. Super. Ct. Cr. R. 61, and all of those pro se post-conviction relief motions were denied by the trial court. See State v. Demby, 2003 WL 21733011 (Del. Super. 2003)(ORDER) at 1-2 (Exhibit B). The Superior Court on March 18, 2004 also denied Demby's first pro se motion for correction of an illegal sentence. (B-4). Demby's untimely attempted appeal of the 2004 dismissal was rejected by this Court on


Exhibit Page 1

I.    THERE WAS NO ILLEGALITY IN THE DEFENDANT'S
      ENHANCED PRISON SENTENCE.


### Standard and Scope of Review


The Superior Court's summary denial of a sentence correction
motion (B-9) is subject to plenary appellate review.  *See* Weber v.
State, 655 A.2d at 1219, 1221 (Del. 1995).


### Argument


On March 11, 1996, Raymond O. Demby, Jr., aka Raheem Love, was
convicted by a Kent County Superior Court jury of delivery of
cocaine on July 13, 1995, in violation of the provisions of 16 Del.
C. § 4751(a). (B-2).  Demby v. State, 695 A.2d 1127, 1129-30 (Del.
1997)(*en banc*).  The Superior Court on May 9, 1996 (B-2) sentenced
Demby to 30 years Level V imprisonment, suspended after 15 years for
15 years of decreasing levels of probationary supervision. (B-6).
Demby's 1996 enhanced sentence was imposed pursuant to the then
existing provisions of 16 Del. C. § 4763(a)(3)(B-30-32), which
provided:

> In any prosecution for violation of § 4751 or 4761(a)(1)
> where a defendant has previously been convicted of any
> offense under this chapter, or under any statute of the
> United States or of any state relating to the delivery or
> possession with intent to deliver of a controlled
> substance or counterfeit substance classified in




Exhibit Page 2

801 A.2d 10                                                                                          Page 5

801 A.2d 10, 2002 WL 1472283 (Del.Supr.)
**(Cite as: 801 A.2d 10)**

had no drugs. None of that." After deciding that he would not pursue Campbell's previous conviction in cross examination, the prosecutor asked Campbell, " So on the night in question, you did not walk away from the police after they caught you selling drugs; is that your testimony?" to which Campbell replied, "Uh-uh. I didn't walk away from the police." As his final question, the prosecutor asked, "Okay. And they had not caught you about to sell drugs?" to which Campbell replied, "Uh-uh. No."

[1] (14) Campbell's first claim is that his trial counsel provided ineffective assistance. This Court will not consider on direct appeal any claim of ineffective assistance of counsel that was not raised below.[FN4] Accordingly, we will not consider Campbell's claim of ineffective assistance for the first time in this direct appeal.

> FN4. *Desmond v. State,* 654 A.2d 821, 829 (Del.1994).

[2] (15) Campbell's next claim is that the judge's questions to him were improper and prejudicial.[FN5] We have reviewed carefully the transcript of Campbell's trial, including the judge's questions, and conclude that this claim is meritless. The judge asked the questions only to clarify possible confusion. [FN6] Even if the questions did not succeed in clarifying the situation, there was no prejudice to Campbell and no plain error.

> FN5. We review this claim, as well as the rest of Campbell's claims, for plain error, since he raises them for the first time in this appeal. SUPR. CT. R. 8; *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986). Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Id.*

> FN6. *Saunders v. State,* 401 A.2d 629, 632-33 (Del.1979).

(16) Campbell's claim that the judge improperly permitted improperly suggestive, perjured

testimony is also meritless. Our review of the trial transcript reveals no impropriety in the witnesses' testimony and no basis whatsoever for a claim of perjury. Campbell complains that Witte's testimony that Herron told him Campbell "dumped something" was inadmissible hearsay and should have been excluded. Even if the testimony was hearsay, its admission was harmless and caused no prejudice, since, as Herron had testified previously, he personally saw Campbell throw something into the street.

[3] (17) There is no merit to Campbell's claim that his arrest was illegal because the date of the crime contained on the **indictment** was incorrect. [FN7] The Superior Court is permitted to **amend** an **indictment** at any time prior to verdict as long as " no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." [FN8] In this case, the Superior Court was clearly within its discretion to permit the amendment of the **indictment** and, as such, there is no support for Campbell's claim. *Also Conviction*

> FN7. Before trial, the State was permitted, without objection from the defense, to **amend** the **indictment** to indicate that the crime was committed on December 16, 1999 rather than December 15, 1999.

> FN8. SUPER. CT. CRIM. R. 7(e).

*5 (18) There is absolutely no basis for Campbell's next claim that the physical evidence had been tampered with. Our review of the trial transcript reveals no impropriety in the way the evidence was handled and no basis upon which to challenge the chain of custody.[FN9]

> FN9. *Tricoche v. State,* 525 A.2d 151, 153 (Del.1987).

[4] (19) Campbell claims that there was insufficient evidence upon which to base his convictions. When a defendant claims that the evidence against him was insufficient to support a jury verdict, the proper standard of appellate review requires this Court to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit Page 3

Westlaw.

NOTES, REFERENCES, AND ANNOTATIONS

**Revisor's note.** -- Section 1 of 67 Del. Laws, c. 130, provides: "This act shall be known as the 'Truth in Sentencing Act of 1989'."

Section 2 of 67 Del. Laws, c. 130, provides: "The purposes of this act are:

"A. To achieve truth in sentencing by assuring that the public, the State and the court will know that the sentence imposed by the court will be served by the defendant and that the defendant will know what the actual effect of the sentence will be.

"B. To require accountability of the court in fashioning a sentence designed to meet the objectives of SENTAC legislation including, but not limited to providing the least restrictive sentence that assures the public safety, makes use of sentencing alternatives and incarcerates the violence prone offender.

"C. To encourage the courts to impose sentences combining incarceration (where appropriate) with quasi-incarceration and probationary follow-up to assure continued supervision of offenders and their successful reentry into society with minimum risk to society."

Section 3 of 67 Del. Laws, c. 130, provides: "The provisions of this act will take effect with respect to all crimes which are committed as of 12:01 a.m., June 30, 1990, or thereafter."

Section 4 of 67 Del. Laws, c. 130, provides: "The provisions of Title 11 and Title 16 which are repealed by this act shall remain in force and effect for the purpose of trial and sentencing for all crimes which occur prior to 12:01 a.m., June 30, 1990."

**Applicability.** -- Delaware criminal statutes provide two alternative sentencing schemes for defendants convicted for the second time of possession with intent to deliver as, under subsection (d) of this section, a prosecutor may attempt to demonstrate that the defendant is a non-addict and, if successful, the defendant is subject to a minimum mandatory sentence of 12 years level V incarceration; in the alternative, under 16 Del. C. § 4763(a), the prosecutor may forego proof that defendant is a non-addict and simply demonstrate that defendant has been convicted of the offense for the second time and, under that statute, the defendant is subject to a minimum mandatory sentence of 15 years level V incarceration. Campbell v. State,  -- A.2d -- (Del. June 18, 2004).

**Weight of narcotics not an element of offense.** -- Although the prosecution failed to turn over a medical examiner's report until minutes before trial, petitioner's allegations of improper chain of custody (derived from discrepancies between the weight of the drugs in the medical examiner's report and the police reports) failed to show prosecutorial misconduct rising to a level prejudicial to the defendant; such discrepancies were irrelevant, because the two charges of which the petitioner was convicted, 16 Del. C. §§ 4751 and 4755(a)(5), were not contingent on any specific weight of heroin. Word v.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Exhibit Page 4

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 1

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware, New Castle County.
STATE of Delaware,
v.
Herman RODRIGUEZ.
CR. A. Nos. IN92-04-0965 to IN92-04-0967.

Submitted: March 5, 1993.
Decided: May 17, 1993.

Upon the State's Motion to Have Defendant
Sentenced as a "Nonaddict." Denied.

William J. Rhodunda, Jr., Deputy Atty. Gen. Dept. of
Justice, Wilmington, for State.
Eugene J. Maurer, Jr., Wilmington, for defendant.

OPINION

COOCH, Judge.

I. PROCEDURAL BACKGROUND

*1 Herman Rodriguez ("Defendant") was arrested on
April 3, 1992, and subsequently indicted for
Trafficking in Cocaine (16 Del.C. § 4753A),
Possession with Intent to Deliver Cocaine (16 Del.C.
§ 4751) and Possession of a Controlled Substance
within 1,000 Feet of a School (16 Del.C. § 4767(a)).
A jury found Defendant guilty of all charges on
September 18, 1992, and a presentence investigation
was ordered.

On October 30, 1992, prior to sentencing, the State,
pursuant to 16 Del.C. § 4751(c), moved the Court to
sentence Defendant as a "nonaddict" on the
Possession with Intent to Deliver Cocaine conviction
and requested a hearing in connection therewith.[FN1]
Prior to the first scheduled "nonaddict" sentencing
hearing, a presentence investigation was completed.
At the hearing, Defendant objected to the "Offender
Interview" portion of the presentence investigation
report, asserting that it was inaccurate insofar as it
reflected his statements to the Presentence officer
because the interview was conducted by an inmate
interpreter at Gander Hill Prison instead of by a Court
approved interpreter. As a result, the Court ordered
the "Offender Interview" portion of the report to be
revised. The hearing was rescheduled for January

13, 1993.

At the January 13, 1993 hearing, the State called two
witnesses and introduced the defendant's medical
records at Gander Hill, as well as excerpts from
Defendant's trial testimony. The Defense put forth
four witnesses and Defendant himself testified. At
the close of all the evidence, the Court reserved
decision and ordered briefing. This is the Court's
post-hearing opinion.

The State argues that it has met its requisite burden
under 16 Del.C. § 4751(c) and thus Defendant
should be sentenced as a "nonaddict." In response,
Defendant challenges the constitutionality of
sentencing Defendant as a "nonaddict" and
alternatively argues that the State has not otherwise
met its burden of proving that Defendant is a
"nonaddict." For the reasons stated in this opinion,
the Court concludes that although 16 Del.C. §
4751(c) is found to be constitutional, the State did not
meet its burden of proving, by a preponderance of the
evidence, Defendant's alleged "nonaddict" status.

II. FACTS [FN2]

A. Significant Pre-trial and Trial Facts

Prior to selection of a jury, Defendant's counsel
requested that the Court explain the consequences to
Defendant of pleading guilty to the charge of
Trafficking in Cocaine, as Defendant was apparently
considering that plea offer. Pursuant to this request,
a judge of this court engaged in a colloquy with
Defendant regarding options available to Defendant
and the consequences of such options. The Court
explained to Defendant the maximum possible
sentences for all of the charges pending against him
but did not allude to the possibility of enhanced
penalties under the "nonaddict" provision of §
4751(c). Also, the State neither advised Defendant
nor Defendant's counsel prior to trial of the
possibility of Defendant being sentenced as a
"nonaddict." The defendant declined the plea offer,
and the case went to trial. The State avers that it
only became aware of Defendant's supposed
"nonaddict" status during the trial itself.

*2 The gist of the State's case at trial was that
Defendant maintained a cocaine distribution

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit Page 5

operation out of one Angela Menendez' home in Wilmington and exploited Menendez' neighbor, one Floreen Oliver, by paying Oliver to store drugs in her house. Angela Menendez, a co-defendant who had pled guilty to the charge of Possession with the Intent to Deliver Cocaine, testified that Defendant often brought large quantities of drugs to her house for distribution. She also testified that, although Defendant spent a significant amount of time at her house, she never saw him use drugs. She further maintained that Defendant often warned her against the dangers of her own drug use.

Defendant testified, through an interpreter, that he had resided in Philadelphia for several years and had moved to Wilmington in January of 1992, approximately three months before he was arrested. Defendant denied the State's allegations of his drug involvement. Regarding his own drug usage, Defendant testified that he used approximately $20 to $30 worth of drugs per week in Delaware. He did not testify that he was an addict nor did he testify that he was a nonaddict. He testified that he used drugs when he had the money to purchase them.

### B. The "Nonaddict" Sentencing Hearing

The State offered the testimony of Bruce Hammond, a registered nurse, who worked in administration for Correctional Medical Systems, Inc. and whose duties included supervision of medical records at the Multi-Purpose Criminal Justice Facility ("Gander Hill") of the Department of Corrections. Hammond has an Associates Degree and a Bachelor of Science Degree in nursing and is presently working toward a B.N. in Nursing Administration. Hammond had never met, treated or examined Defendant. Through Hammond, the State introduced Defendant's medical records for the time Defendant was at Gander Hill, that is, from the date of his arrest on April 3, 1992, to the date of the hearing. $\frac{FN3}$

Hammond testified that Defendant was treated on April 12, 1992, for a "big red spot" on his arm; that a routine physical examination (given to all newly admitted inmates) was administered on April 13, with no medication prescribed; that complete HIV testing took place on April 15; that on May 15, Defendant complained of gas and belching and was prescribed Maalox and given a blood test; that on June 23, he was treated at the prison infirmary for a temperature, fever and sore throat, the diagnosis being a sore throat; that on October 6 he was treated for a cold, stuffy nose and headaches and given Tylenol and an

antihistamine; and that on October 30, Defendant went to the infirmary complaining of headaches.

Hammond testified that the medical records at Gander Hill gave no indication of "withdrawal symptoms" from drug usage. However, Hammond could not rule out the "possibility" that Defendant nevertheless may have indicated to Gander Hill employees at the prison, particularly at the infirmary, that he was suffering from withdrawal symptoms. Hammond further testified that there were many persons incarcerated at Gander Hill who suffer, to some degree, from drug withdrawal symptoms who are never treated at the infirmary.

*3 The State introduced Defendant's own trial testimony at the sentencing hearing as evidence that Defendant was an infrequent user of drugs. $\frac{FN4}$ The State also relied upon a portion of the revised Presentence Report which reads in pertinent part:

### HEALTH
*Physical*

The offender states that he began to smoke marijuana and to sniff and smoke cocaine at the age of twenty years. He began using heroin at age twenty-one. He says he used these substances on a daily basis while he lived in Philadelphia. After moving to Delaware in January 1992, he used drugs at least two or three times weekly or when he had the money. He said that he never was evaluated for drug use or received treatment.

The defense presented the testimony of four witnesses as well as that of Defendant. Defendant's sister, Zaradia Rodriguez, testified that in 1991, Defendant's drug habit became so extreme and his behavior so abusive that she threw him out of her house in Philadelphia shortly before his moving to Delaware. Maria Reyes, a barmaid from Philadelphia and a friend of Defendant, testified that she unsuccessfully tried to dissuade Defendant from his cocaine use and observed his drug habit worsen from 1989 up until the time when he left Philadelphia in January 1992. Debbie Perez, a legal secretary in Philadelphia and a friend of Defendant, testified that she had known Defendant for three years and that based on her personal observation he used cocaine "a lot." Defendant's girlfriend, Damiana Pizzaro, who had been living with Defendant from the summer of 1990 until he moved to Wilmington, testified that he had been using cocaine "every day" and that on occasion he would steal her jewelry and take it to pawn shops to support his drug habit. She claimed that his cocaine habit was the reason she broke off

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 3

the relationship.

Defendant testified that he used various drugs including cocaine, from 1986, continuously through 1992. He testified that in the three-month period prior to his arrest, he used cocaine about six times a day. He claimed he was "addicted to cocaine." He testified that while in prison he suffered from headaches and vomiting, which he ascribed to withdrawal symptoms from cocaine use. Defendant maintained that he requested on many occasions to be taken to the infirmary, which requests went unheeded by the prison.

### III. DISCUSSION

This is a case of apparent first impression.<u>FN5</u> Delaware, like most jurisdictions, has adopted the Uniform Controlled Substances Act but the Uniform Controlled Substances Act contains no provision comparable to § 4751(c). Although other jurisdictions have statutory provisions requiring a court to determine whether a defendant is an addict, Delaware's statutory provision is unusual in its requiring an enhanced penalty for a defendant who is proved, in a separate proceeding, to be a "nonaddict." The State, in essence, must prove a negative. In light of this, a review of § 4751 and its substantial consequences to this Defendant is warranted.

\*4 A first time conviction for trafficking in cocaine requires a minimum mandatory three years incarceration. 16 Del.C. § 4753A(a)(2)(a). A first time conviction for the manufacture, delivery, or possession with intent to manufacture or deliver a narcotic controlled substance, or counterfeit controlled substance is punishable as a Class C felony, with possible incarceration of up to ten years, but there is no mandatory minimum sentence. See 11 Del.C. § 4205(b)(3); 16 Del.C. § 4751(a). In addition, such defendant is subject to a fine of from $5,000 to $50,000. 16 Del.C. § 4751(a).

Here, Defendant has no prior drug offenses that would otherwise require an enhanced sentence on any of the charges on which he was convicted. However, § 4751(c), by its terms, requires the Court to sentence Defendant to certain enhanced penalties if the Court is "satisfied" that the Defendant "is, and was at the time of the offense, not addicted to controlled substances." Specifically, the sentencing of Defendant as a "nonaddict" pursuant to § 4751 requires the imposition of a mandatory minimum of six years (for a first offense) to be served.

16 Del.C. § 4751 provides as follows:
### § 4751. Prohibited acts A; penalties.
(a) Except as authorized by this chapter, any person who manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug is guilty of a class C felony and shall be fined not less than $5,000 nor more than $50,000.
(b) Except as authorized by this chapter, in cases where death occurs as a result of the use or consumption of a controlled substance or counterfeit controlled substance classified in Schedule I or II which is a narcotic drug, any person who is convicted of manufacturing or delivering such drug shall be guilty of a class B felony and shall be fined not less than $10,000 nor more than $100,000.
(c) Where an individual is convicted of a violation of subsection (a) or (b) of this section and the Attorney General may move to sentence the defendant as a nonaddict, the court shall conduct a hearing at which the Attorney General shall have the burden of proof by a preponderance of the evidence that the defendant is a nonaddict. If the court, after hearing, is satisfied that the defendant is, and was at the time of the offense, not addicted to controlled substances, then the following enhanced penalties shall apply:
(1) For the first violation of this section a mandatory minimum sentence of 6 years to be served at Level V.
(2) For the second or subsequent violation of this section a mandatory minimum sentence of 12 years to be served at Level V.

These minimum sentences may not be suspended by the court.

16 Del.C. § 4751.<u>FN6</u> Thus, § 4751(c) operates to divest the sentencing judge of discretion to impose any sentence of less than six years for the underlying felony; it does not authorize a sentence in excess of that otherwise allowed for those enumerated offenses. Section 4751(c) is obviously intended to promote the legitimate societal goal of more severely punishing persons for serious drug crimes when it is shown that a defendant is a nonaddict. Cf. State v. Hefton, Del.Supr., 586 A.2d 1196, 1199-1200 (1988) (concluding that the legislative atmosphere in which 63 Del.Laws c. 134 (trafficking statute) was enacted indicates the General Assembly's intent to deter the distribution of drugs by creating enhanced penalties for certain drug offenses). Such persons who prey upon society through illicit involvement in drug activity, when under no compulsion to do so by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 4

virtue of drug addiction, deserve society's contempt, and it is well within the province of the legislature to mandate that such offenders be sentenced more severely than those offenders who are truly addicts.

**\*5** Thus, the practical effect of the application of § 4751(c) to Defendant is that the Court would be required to sentence him to serve a mandatory minimum of nine years at Level V, consisting of a three year mandatory minimum sentence for the charge of Trafficking in Cocaine followed by the (enhanced) mandatory minimum sentence of six years for the conviction of Possession With Intent to Deliver Cocaine.[FN7]

The procedure contemplated by § 4751(c) is thus: after a defendant has been convicted of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled narcotic substance or counterfeit controlled narcotic substance, the Attorney General "may" move to sentence the convicted defendant as a "nonaddict." 16 *Del.C.* 4751(c). The Court "shall" then conduct a hearing at which time the Attorney General must prove by a preponderance of the evidence that the defendant is a "nonaddict". *Id.* Before applying any enhanced penalties, the Court must be "satisfied" that the defendant "is, and was at the time of the offense, not addicted to controlled substances." *Id.* Notably, the Court must be "satisfied" that the defendant was not addicted to controlled substances both at the time of the hearing *and* at the time of the offense. *Id.*

In the case at bar, the State argues that 16 *Del.C.* § 4751(c) is constitutional and that the State proved at the hearing by a preponderance of the evidence that Defendant is a "nonaddict" and should thus be sentenced accordingly. In response, Defendant argues that 16 *Del.C.* § 4751(c) is unconstitutional because it fails to provide adequate notice and because the definition of "nonaddict" is unconstitutionally vague and ambiguous. Defendant further argues that the State did not otherwise prove by preponderance of the evidence at the sentencing hearing that Defendant was a "nonaddict." Consequently, the issues before the Court are as follows:

1) Whether 16 *Del.C.* § 4751(c) is unconstitutional in that it fails to provide adequate notice to Defendant, thus denying him due process of law?

2) Whether 16 *Del.C.* 4751(c) is unconstitutional in that the definition of "nonaddict" is vague and ambiguous?

3) Whether a judicial determination of "nonaddict" status requires expert psychological and/or medical testimony to warrant a finding of "nonaddict" status? 4) Did the State in this case otherwise prove by a preponderance of the evidence that Defendant was a "nonaddict?"

*A. 16 Del.C. § 4751(c) Provides an Accused with Adequate Notice, Thereby Affording Due Process of Law*

Defendant has challenged the constitutionality of 16 *Del.C.* § 4751(c), asserting that only where an allegation of nonaddiction has been "made by the State at the inception of the criminal proceedings" may the State be allowed to invoke provisions of 16 *Del.C.* § 4751(c). Defendant relies on *State v. Nelson,* N.J.Super., 304 A.2d 210 (1973) for the proposition that the State was required to charge Defendant in the indictment as a "nonaddict." The *Nelson* court was required to construe N.J.Stat.Ann. § 2-A:96-5.1 (1966), which established a separate offense requiring more severe punishment, that is "[a] person who is not addicted [to certain drugs] is guilty of a high misdemeanor...." *Nelson,* 304 A.2d at 211. The *Nelson* court held that in seeking a conviction under a statute providing for punishment of a "nonaddict" in connection of drugs, the State must plead and prove, as part of the original indictment, that the defendant was not a narcotics addict. *Id.* at 213.

**\*6** However, the statute construed in *Nelson* provided that one of the elements of the offense was the nonaddiction of a defendant, which the state had to prove beyond a reasonable doubt. *Nelson,* 304 A.2d at 213. In contrast, Section 4751(c) requires, by its clear terms, that proof of nonaddiction is to be adduced *after* a conviction. Additionally, the *Nelson* court's holding was based on a analogy to "proper practice" (in 1973) under the New Jersey Habitual Criminal Act which was "to allege the prior convictions in the indictment, and to submit any factual issue to the jury." *Id.* In fact, under Delaware's Habitual Offender statute, the State is not required to allege a prior conviction in the indictment. *Compare Key v. State,* Del.Supr., 463 A.2d 633 (1983) (concluding that the State may move to have a defendant sentenced as an habitual offender any time between the conviction and sentence), *habeas corpus denied, In re Petition by Key for Extraordinary Writs,* Del.Supr., 567 A.2d 422 (1989) *with Nelson,* 304 A.2d at 213. In short, the Court finds that the statutory provisions interpreted by the *Nelson* court are significantly distinguishable from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00493-GMS   Document 3   Filed 08/09/2007   Page 15 of 34

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 5

Section 4751(c) so as to render the *Nelson* court's holding inapplicable.

The Court finds that the United States Supreme Court's analysis in *McMillan v. Pennsylvania,* 477 U.S. 79 (1986) to be more analogous. In *McMillan,* the Supreme Court granted certiorari to consider the constitutionality of the Pennsylvania Mandatory Minimum Act (hereinafter the "Pennsylvania Act") which provided enhanced penalties in certain situations. The Pennsylvania Act, which is procedurally similar to § 4751(c), provided that anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years imprisonment if the sentencing judge found, by a preponderance of the evidence, that a person "visibly possessed a firearm" during the commission of the offense. *McMillan,* 477 U.S. at 81. The defendants, who had been convicted of an enumerated felony and subsequently received the enhanced penalty, argued on appeal that the Pennsylvania Act violated the Due Process Clause because "visibly possessing a firearm" was required to have been an element of the offense to be proved at trial beyond a reasonable doubt. *Id.* at 83.

The *McMillan* Court held that the Pennsylvania Act "falls on the permissible side of the constitutional line" and therefore did not violate Due Process Clause of the Fourteenth Amendment. *McMillan* 477 U.S. at 91. In so holding, the Court enunciated certain factors supporting the constitutionality of Pennsylvania's enhanced penalty provision, all of which equally support the constitutionality of § 4751(c).

The first factor noted by the Court was that the Pennsylvania Act expressly provided that "visibly possessing a firearm" is not an element of the offense but instead a sentencing factor. Citing its decision in *Patterson v. New York,* 432 U.S. 197 (1977), the Court pointed out that it "should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties." *McMillan,* 477 U.S. at 86. Similarly, the General Assembly has defined "nonaddiction," by the clear terms of § 4751(c), as a sentencing factor and not an element of the underlying offense.

*7 Second, the Pennsylvania Act did not discard the "presumption of innocence" or otherwise create presumptions in violation of the Due Process Clause. *McMillan,* 477 U.S. at 86-87 (quoting *Patterson,* 432 U.S. at 210). Here, as in *McMillan,* the enhanced

penalty provision under § 4571(c) does not create any of the presumptions condemned in *Patterson,* nor does it relieve the State of its burden of proving guilt. *Cf. McMillan,* 477 U.S. at 87. Clearly, § 4751(c) becomes applicable only after a defendant has been duly convicted of the crime for which he is to be punished. *Id.*

The final factor noted in *McMillan* is that the Pennsylvania Act operates "solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it" for the underlying felony. *McMillan,* 477 U.S. at 88. In other words, regardless of a special finding of "visible possession of a firearm," the sentencing court is authorized to sentence a defendant to a penalty equal to or exceeding five years. Similarly, in the case at bar, the six-year minimum mandatory sentence under § 4751(c) simply limits the Court's discretion in selecting a penalty within the ten-year range already available to it under 16 *Del.C.* § 4751(a). *See* 11 *Del.C.* § 4205(b)(3).

In addition to *McMillan,* the Court finds support for the constitutionality of § 4751(c) in Delaware's Habitual Criminal statutes, 11 *Del.C.* § § 4214 and 4215, which provide the Court with procedures similar to that of § 4751(c) to determine whether or not a defendant should be subject to an enhanced sentence. Section 4215(b) provides as follows:

If, at any time after conviction and before sentence, it shall appear to the Attorney General or to the Superior Court that, by reason of such conviction and prior convictions, a defendant should be subjected to § 4214 of this title, the Attorney General shall file a motion to have the defendant declared an habitual criminal under § 4214 of this title. If it shall appear to the satisfaction of the Court at a hearing on the motion that the defendant falls within § 4214 of this title, the Court shall enter an order declaring the defendant an habitual criminal and shall impose sentence accordingly.

11 *Del.C.* § 4215(b). The similarities between Section 4215(b) and Section 4751(c) are apparent: both provide that the Attorney General shall move, after conviction and before sentencing, for a hearing to determine possible enhancement of a sentence based on the "status" of the defendant.

The Delaware Supreme Court has clearly established that habitual criminality is a "status," not a separate criminal offense. *Key,* 463 A.2d at 639 (holding that "it is axiomatic that habitual criminality is a status...."). The Supreme Court has also endorsed a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00493-GMS   Document 3   Filed 08/09/2007   Page 16 of 34

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 6

bifurcated procedure under § 4215(b), requiring a separate habitual offender hearing solely to determine the factual existence of prior convictions which, if proven, will justify enhanced punishment. *Id.* (citing *Gibbs v. State,* Del.Supr., 208 A.2d 306, 308 (1965)). Importantly, the State may move to have a defendant punished as a habitual offender at any time between the time of conviction and sentencing. *Id.* at 638. Although due process requires that a person have "reasonable notice" of the State's intent to seek additional punishment, the State is not required to charge the defendant in the indictment as a habitual offender. *Id.* at 639 (holding that defendant must have reasonable notice and has a right to be present with counsel, have an opportunity to be heard, confront the witnesses against him, have the right to cross examine witnesses, and to offer evidence of his own). *Key* further held that a State is "constitutionally free to adopt such methods for habitual criminal hearings as are most harmonious with the particular jurisdictions allocation of responsibility between court and jury ... [and are] best accommodated to the state's established trial procedures...." *Id.* (quoting from *Spencer v. Texas,* 385 U.S. 554, 567 (1967)).

**\*8** By way of comparison, nonaddiction under § 4751(c) is also a "status" and not a separate offense. Indeed, the hearing required under § 4751(c), like the habitual criminal hearing, is to be held solely for the purpose of determining the factual existence of a defendant's non-addiction which, if proved, will justify enhanced punishment. Furthermore, the General Assembly is constitutionally free to adopt "nonaddict" hearings that are most harmonious with Delaware's established trial procedures. *See Key,* 463 A.2d at 639. The General Assembly adopted the bifurcated procedure contemplated under § 4751(c), the constitutionality of which is supported by *McMillan,* the Supreme Court's analysis in *Key* as well as by the "strong presumption of constitutionality" afforded to all statutory provisions duly promulgated by the Delaware's General Assembly. *See Opinion of Justices,* Del.Supr., 425 A.2d 604, 605 (1981) (holding that there is a strong presumption that a statute is constitutional). Thus, as there is no constitutional requirement that the State initially charge defendants, in the Indictment or Information, as to their possible habitual criminal status, the Court concludes that the State was not required in the instant case to charge Defendant as to his possible "nonaddict" status.

Furthermore, contrary to Defendant's contention, it is not necessarily more equitable to a defendant to

require the State to charge and prove "nonaddiction" as a part of the trial itself. Delaware's bifurcated procedure contemplated by § 4751(c) seems particularly fair when it is compared with a procedure in a state such as Connecticut which puts the burden on the defendant to prove, at trial, his or her drug dependency, thus possibly requiring a defendant to make difficult tactical decisions at trial.

In Connecticut a sale of a narcotic substance by a person who is not "drug-dependent" is a violation of *Conn.Gen.Stat.* § 21a-278(b). *See State v. Hart,* Conn.Supr., 605 A.2d 1366, 1366, 1372-1373 (1992) (concluding that the status of being "drug dependent" would exempt an accused person from the application of this statute). However, "drug-dependency" is not an element of the offense which the state is required to prove beyond a reasonable doubt. *Id.* at 1373. Rather, it is an exemption from liability under *Conn.Gen.Stat.* § 21a-278(b). *Id.* Therefore, the prosecution is not required to negate drug dependency, but, rather, the defendant has the burden of proving by a preponderance of the evidence that he or she is drug dependent. $^{FN8}$ *Id.*

Under Connecticut's procedure, a defendant alleged to be non drug-dependent may be forced into making a tactical decision of whether to introduce evidence at trial of his or her drug dependency, thus rebutting the presumption of non "drug-dependency" but thereby possibly incurring the disfavor of the jury. *See Hart,* 605 A.2d at 1369 (defendant opting to introduce evidence of her drug dependency); *see also State v. Quinones,* Conn.App., 574 A.2d 1308 (1990) (defendant did not introduce evidence of his drug dependency because of his fear of the adverse affect such evidence would have on the jury's determination with respect to other charges pending against him), *appeal denied,* 576 A.2d 546 (1990), *habeas corpus denied, Quinones v. Meachum,* 811 F.Supp. 776 (D.Conn 1991), *aff'd,* 978 F.2d 707 (1992), *cert. denied,* 507 U.S. 943, 113 S.Ct. 1347 (1993).

**\*9** Indeed, Connecticut courts have implicitly recognized that a bifurcated proceeding on the issue of "drug-dependency" would benefit a defendant. *Quinones,* 574 A.2d at 1313. In *Quinones,* the defendant, conceding that he made a tactical decision at trial not to proffer evidence of drug dependency because of a fear that such evidence would "adversely affect the jury's deliberation," requested, prior to his sentencing, that a separate finding of drug dependency be made by the court after the trial. *Id.* The *Quinones* court held:

"The defendant, in effect, asks us to establish, by

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 7

judicial fiat, a bifurcated procedure where the fact of drug dependency would be made, not by the fact finder at trial, but at a separate hearing. We are disinclined to mandate such a procedure."

*Id.* The *Quinones* court thus implicitly sanctioned the propriety of a separate hearing on "drug dependency," although declining to require same.

Delaware's statutory scheme not only puts the burden on the State, it affords a defendant greater latitude in making such "tactical decisions" at trial than under the provisions of statutes in states such as Connecticut. In the case at bar, Defendant was free at his trial to offer such proper and competent evidence as he thought appropriate to defend against the charge of Possession With Intent to Deliver Cocaine without any fear that evidence of his alleged addiction might "adversely affect the jury's deliberation" and prejudice his case. Then, in the subsequent "nonaddict" proceeding, Defendant had the opportunity (but was not required) to put forth evidence of his claimed "addict" status.

Finally, as a practical matter, it should be noted that the State in many cases might find it difficult, if not impossible, to charge or allege nonaddiction at the time of seeking an indictment since the statute requires a finding of nonaddiction both as of the time of the offense *and* the hearing. The State cannot always know, at the time of seeking an indictment, whether a defendant will not be addicted at the time of the "nonaddict" sentencing hearing.[FN9]

In brief, 16 *Del.C.* § 4751(c) does not violate Defendant's right to due process of law because the State's postconviction application to have Defendant sentenced as a "nonaddict" constituted "reasonable notice" to him and thus satisfied the constitutional due process requirements for such a "status" determination.

*B. The Term "Nonaddict" in 16 Del.C. § 4751(c) is Sufficiently Clear and Precise so as not to Render the Statute Unconstitutional*

Defendant also challenges the constitutionality of § 4751(c) on the grounds that the term "nonaddict" is nowhere defined in Title 16, Chapter 47, thereby rendering the statute unconstitutionally vague and ambiguous.

It is axiomatic that:
"... a statute which either forbids or requires the

doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

*10 *Wright v. State*, Del.Supr., 405 A.2d 685, 687 (1979)* (quoting *Connally v. General Construction*, 269 U.S. 385 (1926)).

The term "nonaddict" is not defined in Title 16, Chapter 47. However, 16 *Del.C.* § 4701(1) defines "addicted" and "addiction":

*As used in this chapter:*

(1) Addicted or addiction shall mean dependence upon a drug in the following manner:

a. Psychological dependence upon a drug in the sense that a user lacks the ability to abstain from taking or using the drug or experiences a compulsive need to continue its use; *and*

b. A tolerance to the effects of the drug which leads the user to require larger and more potent doses; *and*

c. Such physical dependence upon the drug that the user suffers withdrawal symptoms if he is deprived of its dosage.

16 *Del.C.* § 4701(1) (emphasis added).

Importantly, § 4701 provides that the concept of "addicted" or "addiction" shall be "[a]s used in this chapter." The General Assembly enacted § 4701(a) into law in 1973 in the same bill [FN10] that amended § 4751 to require a harsher sentence for a person "not himself addicted to narcotic drugs." The General Assembly, in later revising § 4751(c) in 1989 to include the term "nonaddict," is presumed to have been aware of the existing statutory provision within the chapter, that is the definition section in Chapter 47 (§ 4701(1)). *See State v. Botluck*, Del.Supr., 200 A.2d 424, 427 (1964) (concluding that the General Assembly is presumed to have been aware of existing statutes and to have legislated accordingly), *cited in* Norman J. Singer, *Sutherland Stat. Construction* § 45.12, at 427 (5th ed. 1986). Thus, the Court finds that the General Assembly intended the definition of "addict" in § 4701 to be used in the negative for the purposes of Section 4751(c). [FN11] "Non" is defined as "[T]he common prefix of negation." Black's Law Dictionary, 6th Ed. (1979).

The use of the conjunction "and" between the sub-parts of § 4701(1) requires that sub-parts a., b., *and* c. be proven before "addiction" is established. Since the status of addiction requires factual finding of all three sub-parts of § 4701(1), it follows that the *absence* of a finding of the existence of any of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 8

three sub-parts necessarily compels a finding of "nonaddiction" or "nonaddict" status.

Therefore, the State, in order to prevail after a hearing pursuant to § 4751(c), must prove, by preponderance of the evidence, the non-existence of any *one* of the three sub-parts of § 4701(1), which is to say that the State must prove: 1) that a defendant is *not* "[psychologically dependent] upon a drug in the sense that the user [does not] lack the ability to abstain from taking or using the drug or [does not] experience[e] a compulsive need to continue its use;" 2) that a defendant "[does not] have [a] tolerance to the effects of the drug which leads the user to require larger or more potent doses;" *or* 3) there exists no "[s]uch physical dependence upon the drug that the user suffers withdrawal symptoms if he is deprived of its dosage."

\*11 Although Defendant correctly points out that Title 16, Chapter 47 does establish a somewhat convoluted procedure for determining "nonaddict" status, the procedure is a far cry from compelling a finding of unconstitutionality. *See Spencer v. Texas,* 385 U.S. 554, 567-568 (1967) (concluding that a state rule of law governing the procedure for determining habitual offender status "does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give surer promise of protection to the prisoner at bar."), *reh'g denied,* 386 U.S. 969 (1967). *See also State v. Robinson,* Del.Supr., 251 A.2d 552, 555 (1969) (concluding that the wisdom of a statute is a matter solely for the consideration and decision of the General Assembly). Although ideally the term "nonaddict" should be defined in Chapter 47 and, as stated, the procedure for determining nonaddict status is somewhat convoluted, the Court finds that the definition of "nonaddict" is sufficiently clear and precise and does otherwise not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*C. Section 4751(c) Requires Expert Psychological and/or Medical Testimony to Warrant a Judicial Determination of "Nonaddiction"*

Defendant contends that a judicial determination of whether an individual is a "nonaddict" must be supported by expert psychological and/or medical testimony. Section 4751(c) is silent on the subject of expert testimony, and decisions from other jurisdictions, grounded upon dissimilar statutes, are of little help.[FN12]

The State concedes that it is difficult to prove, generally, the non-existence of a § 4701(1)(a) status (non-existence of psychological dependence upon a drug) without the aid of expert psychological testimony. In fact, the State does not argue that it successfully negated the existence of psychological dependency at Defendant's hearing. However, the State maintains that neither expert psychological or expert medical testimony is required to prove the non-existence of § 4701(1)(b) (non-existence of a tolerance to the effects of the drug which leads a user to require larger and more potent doses), and the State urges that it in fact disproved this at the hearing. Similarly, the State maintains that such expert testimony is not necessary to prove the non-existence of § 4701(1)(c) (such physical dependence upon the drug that the user suffers withdrawal symptoms if a user is deprived of its dosage) and maintains that the State also disproved this at the hearing.

In support of the State's claim that it proved nonaddiction by negating sub-parts (b) and (c), the State relies upon Hammond's testimony that, in Hammond's opinion, the medical records did not disclose evidence of drug withdrawal. The State further relies upon the testimony of lay persons (Angela Menendez, Defendant's witnesses, and Defendant himself) as proof that Defendant did not have a tolerance to the effects of drugs which led him to require larger and more potent doses. Finally, the State urges the Court to find that it proved the absence of a physical dependence upon the drug such that the user, Defendant, suffered withdrawal symptoms when deprived of its dosage.

\*12 The Court believes that each of the sub-parts to § 4701(1) requires expert testimony to prove "nonaddict" status in the context of a "nonaddict" sentencing hearing. The Court notes that in *State v. Raymond Bruton, supra,* the Court ordered, after a contention by the State that a defendant was not addicted to narcotic drugs and upon a motion of the defendant, that arrangements be made for the defendant to be examined by an otolaryngologist (eye, ear, nose and throat doctor) "to determine if [the defendant] is addicted to heroin." This is understandable in that the status of "addiction" is primarily a medical concept, and this Court finds that proof of the absence of psychological dependence, the absence of a tolerance to the effects of a drug, and the absence of physical dependence upon a drug *each* require expert testimony. *See People v. O'Neil,* Cal.Supr., 401 P.2d 928, 930 (1965) ( "The definition of 'addict' is primarily a medical concept.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The testimony of Mr. Hammond, albeit a registered nurse with some expertise in diagnosing and recognizing the symptoms of addiction, did not suffice. Mr. Hammond never himself examined Defendant. In fact, no one ever examined Defendant for the specific purpose of determining his status as a addict or nonaddict. Thus, Mr. Hammond's testimony concerning Defendant's status was based solely on the *absence* of any evidence of Defendant's addiction in the medical records from Gander Hill and not from positive proof of his nonaddiction. Further, Mr. Hammond candidly admitted that the very records relied on by the State may not reveal the withdrawal symptoms Defendant claims he was experiencing.

The determination of the status of nonaddiction of a defendant, to be sentenced for the manufacture, delivery, or possession with intent to manufacture or deliver a controlled Schedule I or II narcotic drug, is a particularly serious matter for the Court to adjudicate, given the requirement of § 4751 that a mandatory minimum of six years (twelve years for a prior conviction) be imposed. The Court believes that, in cases adjudicated under § 4751(c), expert psychological and/or medical testimony (depending upon which part(s) of § 4701(1) the State seeks to negate) should be required in order for the State to establish, by a preponderance of the evidence, a status of nonaddiction of a defendant. Such procedure is a relatively minimal burden upon the State. The Court, upon proper application by the State, is empowered to order a defendant to submit to a psychological and/or medical examination for the determination of addiction or nonaddiction.<sup>FN13</sup> This should be the appropriate procedure henceforth in § 4751 applications by the State.

### *D. The State Did Not Otherwise Prove Defendant's Alleged Nonaddict Status*

Assuming *arguendo,* that expert testimony is not required in "nonaddict" sentencing hearings, the State did not otherwise prove Defendant's nonaddict status. The Court does not ascribe much weight to the very likely self-serving statements of Defendant at trial, or to statements given by him during the presentence investigation, as such latter statements may well have been motivated by desire to escape conviction or to impress a jury, a presentence investigator or a sentencing judge. *Cf. Davis v. State,* Alaska Supr., 566 P.2d 640, 642-643 (1977) (concluding that defendant's claim that he had lied about his drug

addiction to a probation officer during the presentence investigation did not constitute grounds for altering the original sentence. The Court is similarly skeptical of Angela Menendez' testimony in light of her previous status as a codefendant in this case, as well as in view of her overall demeanor on the witness stand. Furthermore, Ms. Menendez's testimony did little to establish Defendant's "nonaddict" status at the time of the offense and did nothing to establish Defendant's status at the time of the hearing, which was some ten months after the offense. The "evidence" from Angela Menendez was in part rebutted by Defendant's witnesses' testimony, although all defense witnesses had obvious reasons to give supportive testimony regarding Defendant's supposed addictive status. In short, the issue of expert testimony aside, the Court does not have sufficient confidence in the testimony of the lay witnesses' testimony to base a finding of nonaddiction upon such "evidence," especially given the extremely serious consequences that flow from such a finding.

### CONCLUSION

**\*13** For the foregoing reasons, the State's motion to have Defendant sentenced as a "nonaddict" is **Denied.** Sentencing to follow.

> FN1. The Trafficking in Cocaine charge on which Defendant was convicted carries a mandatory minimum 3 year sentence, 16 *Del.C.* § 4753 A(a)(2)(a). The "nonaddict" sentencing provisions of Section 4751(a) do not apply to the offenses of Trafficking in Cocaine or to Possession of a Controlled Substance within 1,000 Feet of a School. The sentencing of Defendant as a "nonaddict" pursuant to 16 *Del.C.* § 4751(c)(1) for Possession with Intent to Deliver Cocaine would however mandate a mandatory minimum period of incarceration of 6 years; no minimum mandatory sentence otherwise applies to the sentencing of defendant, as an "addict," for Possession with Intent to Deliver Cocaine.

> FN2. The only facts set forth herein are those facts pertinent to the issues raised by the State's Motion to have Defendant Sentenced as a "Nonaddict."

> FN3. The Court admitted most of

Case 1:07-cv-00493-GMS    Document 3    Filed 08/09/2007    Page 20 of 34

Page 10

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Defendant's Gander Hill medical records, over objection, *see* D.R.E. 803(6), but sustained Defendant's objection to admission of those portions of the medical records reflecting or recording statements by Defendant to medical personnel about his medical condition since, according to Hammond, "probably" no interpreter was used.

FN4. The pertinent facts from the trial are summarized at pp. 3-4 of this Opinion.

FN5. The Court has found only one case in this Court where the State moved for a Defendant to be sentenced as a "nonaddict," *State v. Raymond Bruton,* Del.Super., Cr.A. IN80-12-0862, Bifferato, J. (June 1, 1981) (under prior § 4751 in effect in 1981). However, prior to final adjudication the State's motion was withdrawn. *See* further discussion of *Bruton* at p. 22.

FN6. The legislative history of § 4751 is significant. Present 16 *Del.C.* § 4751(c) was enacted into law July 17, 1989 as part of the "Truth in Sentencing Act of 1989." It repealed former Section 4751 that had been first enacted into law in 1972. § 4751 was originally enacted in 1972 and provided as follows:

Except as authorized by this Chapter, any person who manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction shall be fined not less than $5,000 and no more than $50,000 and imprisoned not more than 25 years.

58 *Del.Laws* c. 424.

In 1973, § 4751 was amended by its redesignation as § 4751(a) with the insertion of the phrase "who is addicted to narcotic drugs" in subsection (a) and by the addition of new subsections (b) and (c). Those latter subsections first introduced the fact of "nonaddiction" of a convicted defendant as compelling a harsher sentence. Revised § 4751 then read:

Except as authorized by this Chapter, any person who is addicted to narcotic drugs who manufactures, delivers or possesses with intent to manufacture or deliver a

controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction shall be fined not less than $5,000 and no more than $50,000 and imprisoned not more than 25 years.

(b) Except as authorized by this chapter, any person who is not himself addicted to narcotic drugs who manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug is guilty of a felony, and upon conviction shall be fined not less than twenty-five thousand dollars ($25,000) nor more than one hundred thousand dollars ($100,000) and imprisoned for 30 years without eligibility for parole.

(c) Except as authorized by this chapter, in cases where death occurs as a result of the use or consumption of a controlled substance or counterfeit controlled substance classified in Schedule I or Schedule II which is a narcotic drug, any person not addicted to narcotic drugs who is convicted of manufacturing or delivering such drug shall be guilty of a felony and shall be sentenced to imprisonment for life, and shall not be eligible for parole until after serving 45 years from the date of conviction under this subparagraph, and if paroled the person shall remain on parole for the remainder of his natural life or until parole is terminated pursuant to Chapter 43, Title 11, Delaware Code.

59 *Del.Laws,* c. 132.

Section 4751 was next revised in 1980 to substitute a slightly new phrase "unless the defendant is not himself addicted to narcotic drugs "in new subsections (a) and (b). Section 4751 then provided as follows (until its repeal in 1989):

(a) Except as authorized by this chapter, any person who manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug is guilty of a felony and shall be fined not less than $5,000 nor more than $50,000 and imprisoned not more than 25 years unless the defendant is not himself addicted to narcotic drugs in which case, upon conviction, he shall be fined not less than

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00493-GMS    Document 3    Filed 08/09/2007    Page 21 of 34

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 11

$25,000 nor more than $100,000 and imprisoned for 30 years without eligibility for parole.

(b) Except as authorized by this chapter, in cases where death occurs as a result of the use or consumption of a controlled substance or counterfeit controlled substance classified in Schedule I or Schedule II which is a narcotic drug, any person not addicted to narcotic drugs who is convicted of manufacturing or delivering such drug shall be guilty of a felony and shall be sentenced to imprisonment for life, and shall not be eligible for parole until after serving 45 years from the date of conviction under this subparagraph, and if paroled the person shall remain on parole for the remainder of his natural life or until parole is terminated pursuant to Chapter 43, Title 11, Delaware Code.

62 Del.Laws, c. 346.

FN7. Interestingly, Trafficking in Controlled or Counterfeit Controlled Narcotic Schedule I or II Substances is excluded by the General Assembly from § 4751(a), possibly because of separate mandatory minimum sentences that must be imposed upon conviction. See 16 Del.C. § 4753A.

FN8. This procedure, which unlike § 4751(c), puts the burden on defendants to prove their "addict" or "drug dependent" status, has been constitutionally challenged but upheld. Quinones v. Meachum, 811 F.Supp. 776 (D.Conn.1991) (granting summary judgment in a habeas corpus proceeding while concluding that, although the statute (Conn.Gen.Stat. § 21a-278(b)) may be "bizarre," it was not unconstitutional), aff'd. 978 F.2d 707 (1992), cert. denied, 507 U.S. 943, 113 S.Ct. 1347 (1993).

FN9. Section 4751(c), by its requirement of nonaddiction both at the time of the offense and as of the sentencing hearing, may theoretically have the unintended effect of encouraging a defendant to become "addicted" before the sentencing hearing so as to avoid the enhanced penalties.

FN10. House Bill 132, as amended by House Amendments Nos. 1, 2, 4 and 5 of the 127th General Assembly; 59 Del.Laws c.

132.

FN11. The Defendant directs the Court to the definitions of "addict" from other states and from the Federal Narcotic Addict Rehabilitation Act of 1966 (42 U.S.C. § 4251(a) (1986)). However, such definitions, being grounded on dissimilar statutes, are not helpful.

FN12. For example, the Federal Narcotic Addict Rehabilitation Act gives discretion to the district courts to have a physical examination conducted on a convicted defendant "to determine whether he is an addict," upon application of a defendant. 18 U.S.C. § 4252.

Under Illinois law, if a defendant indicates or if the court has reason to believe that a defendant is an addict, then the court must grant the defendant a substance abuse evaluation as part of the Illinois drug abuse program. See People v. Henry, Ill.App.Ct., 560 N.E.2d 1205 (1990).

Under New York's Mental Hygiene Law, the court must order an examination of a defendant for the purposes of determining whether the defendant is an addict. See People v. Carter, N.Y., 341 N.Y.S.2d 106 (1973).

FN13. Although there is no specific authority granted to Superior Court to order a medical examination in § 4751 matters, Super.Ct.Crim.R. 57(d) incorporates by reference the Superior Court Civil Rules. That rule provides that if no procedure is specifically provided by the criminal rules, the Court "shall" regulate its practice by the Superior Court Civil Rules. Super.Ct.Civ.R. 35(a), which states that the Court may order a party to submit to a "physical or mental examination" when the "mental or physical condition ... is in controversy," provides authority for the Court to order a mental and/or physical examination in nonaddict proceedings. Cf. State v. West, Del.Super., C.A. No. IN89-111435, Toliver, J. (November 20, 1990) Mem.Op. at 4 (holding that under previous Super.Ct.Cr.R. 57(b), this Court "may" proceed in accordance with the Superior Court Civil Rules and do "all that is necessary" to ensure that the defendant receives a fair trial).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Del.Super.,1993.
State v. Rodriguez
Not Reported in A.2d, 1993 WL 189548 (Del.Super.)

END OF DOCUMENT

State of Delaware v.   RAHEEM LOVE                              DOB: ~~~~~~~~~~~
State's Atty: MARIE O GRAHAM , Esq.         AKA: RAYMOND O DEMBY
Defense Atty: SANDRA W DEAN , Esq.              RAYMOND O DEMBY

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 9 | 02/06/1996 | CRIMINAL TRIAL CALENDAR - RESCHEDULED CONTINUED TO 2/7/96   2/07/96 TBH | RIDGELY HENRY DUPONT |
| 8 | 02/07/1996 | CRIMINAL TRIAL CALENDAR - TRIAL 3/6/96.              02/07/96  DB | TERRY N. MAXSON, JR. |
| 10 | 02/15/1996 | SUBPOENA(S) ISSUED             2/26/96 PRB | |
| 14 | 02/27/1996 | LETTER CHAIN OF CUSTODY    4/10/96 TH | |
| 11 | 03/06/1996 | CRIMINAL TRIAL CALENDAR - TRIAL JURY SELECTED. TRIAL STARTED.       3/6/96 PRB | |
| | 03/11/1996 | PRESENTENCE INVESTIGATION ORDERED | |
| 12 | 03/11/1996 | JURY TRIAL DELIVERY OF A NARCOTIC SCH. II CONTROLLED SUBSTANCE; THE JURY FIND THE DEFT. GUILTY AS CHARGED. S/MARIE GRAHAM, D/SANDY DEAN, CR/DEBRA HOLT,CC/BRODERSEN. | |
| 13 | 03/11/1996 | JURY TRIAL BOND REVOKED.        3/11/96 PB | ALFORD HAILE L. |
| 16 | 05/08/1996 | MOTION TO WITHDRAW AS COUNSEL FILED. | |
| 17 | 05/08/1996 | ERROR | |
| 18 | 05/08/1996 | ERROR | RIDGELY HENRY DUPONT |
| 19 | 05/08/1996 | ERROR | RIDGELY HENRY DUPONT |
| 21 | 05/09/1996 | SENTENCING CALENDAR, DEFENDANT SENTENCED. | ALFORD HAILE L. |
| 33 | 05/09/1996 | SENTENCE:   ORDER SIGNED. | ALFORD HAILE L. |
| 20 | 05/10/1996 | MOTION TO WITHDRAW AS COUNSEL DENIED. | RIDGELY HENRY DUPONT |

Exhibit Page 6

zed to adminis-
ue, in the name
Social Services,
quiring the tes-
ction of books,
to any matter
enas shall also
cant or person
nacy or refusal
ena under this
ounty in which
sdiction, upon
n order requir-
ify or produce

l by a decision
oke or refuse to
apter may ap-
. Such appeal
uestion before
retary abused
ified of an ap-
shall forward
nplete copy of
ice records of
ore the Secre-
he Secretary's
ary's reasons
Del. Laws, c.

impose

ound a regis-
chapter or of
er, the Secre-
and authority
er, have the
cant for such
oaid, with the
may be sus-
oposed by the

e, the Secre-
learing after
nt's attorney.
ry only upon

ls would not
ich fine; and
will achieve

a fine on a
revoked by
power and
n fines is not
ng, civil or
n, nor shall
e Secretary
evocation.

(d) Any person so fined may appeal to the Superior Court for a trial de novo, provided the appeal is taken within 15 days of the time of the decision of the Secretary. (60 Del. Laws, c. 583, § 5; 70 Del. Laws, c. 186, § 1.)

## § 4737. Records of registrants.

Persons registered to manufacture, distribute or dispense controlled substances under this chapter shall keep records and maintain inventories in conformance with the record-keeping and inventory requirements of federal law and with any additional rules the Secretary issues. (16 Del. C. 1953, § 4736; 58 Del. Laws, c. 424, § 1; 60 Del. Laws, c. 583, § 5.)

## § 4738. Order forms.

Controlled substances in Schedules I and II shall be distributed by a registrant to another registrant only pursuant to an order form. Compliance with federal law respecting order forms shall be deemed compliance with this section. (16 Del. C. 1953, § 4737; 58 Del. Laws, c. 424, § 1; 60 Del. Laws, c. 583, § 5.)

## § 4739. Prescriptions.

(a) Except when dispensed directly by a practitioner other than a pharmacy to an ultimate user, no controlled substance in Schedule II may be dispensed without the written prescription of a practitioner.

(b) In emergency situations, as defined by rule of the Secretary, Schedule II drugs may be dispensed upon oral prescription of a practitioner, reduced promptly to writing and filed by the pharmacy. Prescriptions shall be retained in conformity with the requirements of § 4737. No prescription for a Schedule II substance may be refilled.

(c) Except when dispensed directly by a practitioner other than a pharmacy to an ultimate user, a controlled substance included in Schedule III or IV which is a prescription drug shall not be dispensed without a written or oral prescription of a practitioner. The prescription shall not be filled or refilled more than 6 months after the date thereof or be refilled more than 5 times, unless renewed by the practitioner.

(d) A controlled substance included in Schedule V shall not be distributed or dispensed other than for a medical purpose. (16 Del. C. 1953, § 4738; 58 Del. Laws, c. 424, § 1; 60 Del. Laws, c. 583, § 5.)

### Subchapter IV

### Offenses and Penalties

## § 4751. Prohibited acts A; penalties.

(a) Except as authorized by this chapter, any person who manufactures, delivers or possesses

with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug is guilty of a class C felony and shall be fined not less than $5,000 nor more than $50,000.

(b) Except as authorized by this chapter, any person who manufactures, delivers or possesses with the intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule III, IV or V which is a narcotic drug is guilty of a class E felony and shall be fined not less than $3,000 nor more than $15,000.

(c) Except as authorized by this chapter, in cases where death occurs as a result of the use or consumption of a controlled substance or counterfeit controlled substance classified in Schedule I, II, III, IV or V which is a narcotic drug, any person who is convicted of manufacturing or delivering such drug shall be guilty of a class B felony and shall be fined not less than $10,000 nor more than $100,000.

(d) Where an individual is convicted of a violation of subsection (a), subsection (b) or subsection (c) of this section and the Attorney General may move to sentence the defendant as a nonaddict, the court shall conduct a hearing at which the Attorney General shall have the burden of proof by a preponderance of the evidence that the defendant is a nonaddict. If the court, after hearing, is satisfied that the defendant is, and was at the time of the offense, not addicted to controlled substances, then the following enhanced penalties shall apply:

  (1) For the first violation of this section a mandatory minimum sentence of 6 years to be served at Level V.

  (2) For the second or subsequent violation of this section a mandatory minimum sentence of 12 years to be served at Level V.

These minimum sentences may not be suspended by the court. (67 Del. Laws, c. 130, § 15; 70 Del. Laws, c. 80, §§ 1-3.)

## § 4752. Prohibited acts B; penalties.

(a) Except as authorized by this chapter, any person who manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I, II, III, IV or V which is not a narcotic drug is guilty of a class E felony and upon conviction shall be fined not less than $1,000 nor more than $10,000 and imprisoned not more than 5 years.

(b) Any person who distributes, sells, offers to sell, dispenses, administers, or prescribes any anabolic steroid or any counterfeit substance purporting to be an anabolic steroid for the purposes of human body building or enhancement of human athletic performance is guilty of a class E felony. For purposes of this section, it is not a valid medical practice to distribute, sell, offer to sell, dispense, administer or prescribe any anabolic steroid for purposes of

Exhibit Page 7

Maiming without lying in wait,

Rape,

Assault with intent to commit rape,

Robbery,

Assault with intent to commit robbery.

(d) A conviction of rape or kidnapping under either § 763 or § 783 of this title, as the same existed and were defined prior to the amendment of this section, shall be considered a prior conviction for the purpose of the effectiveness and applicability of this subsection, this section and § 4215 of this title. (11 Del. C. 1953, § 4213; 58 Del. Laws, c. 497, § 2; 59 Del. Laws, c. 547, §§ 19-21; 65 Del. Laws, c. 159, § 1; 66 Del. Laws, c. 269, § 7; 67 Del. Laws, c. 350, § 37; 70 Del. Laws, c. 477, § 2; 71 Del. Laws, c. 285, §§ 15, 16; 72 Del. Laws, c. 34, § 4; 72 Del. Laws, c. 43, § 7; 72 Del. Laws, c. 197, § 8.)

### § 4215. Sentence of greater punishment because of previous conviction.

(a) If at the time of sentence, it appears to the court that the conviction of a defendant constitutes a second or other conviction making the defendant liable to a punishment greater than the maximum which may be imposed upon a person not so previously convicted, the court shall fully inform the defendant as to such previous conviction or convictions and shall call upon the defendant to admit or deny such previous conviction or convictions. If the defendant shall admit the previous conviction or convictions, the court may impose the greater punishment. If the defendant shall stand silent or if the defendant shall deny the prior conviction or convictions, the defendant shall be tried upon the issue of previous conviction; provided, however, that the foregoing procedure shall not apply in cases of fourth offenders liable to sentence of life imprisonment under § 4214 of this title.

(b) If, at any time after conviction and before sentence, it shall appear to the Attorney General or to the Superior Court that, by reason of such conviction and prior convictions, a defendant should be subjected to § 4214 of this title, the Attorney General shall file a motion to have the defendant declared an habitual criminal under § 4214 of this title. If it shall appear to the satisfaction of the Court at a hearing on the motion that the defendant falls within § 4214 of this title, the Court shall enter an order declaring the defendant an habitual criminal and shall impose sentence accordingly. (11 Del. C. 1953, § 4214; 58 Del. Laws, c. 497, § 2; 70 Del. Laws, c. 186, § 1.)

### § 4215A. Sentence of greater punishment because of previous conviction under prior law or the laws of other jurisdictions.

(a) Notwithstanding any provision of law to the contrary, if a previous conviction for a specified offense would make the defendant liable to a punishment greater than that which may be imposed upon a person not so convicted, that previous conviction shall make the defendant liable to the greater punishment if that previous conviction was:

(1) For an offense specified in the laws of this State or for an offense which is the same as, or equivalent to, such offense as the same existed and was defined under the laws of this State existing at the time of such conviction; or

(2) For an offense specified in the laws of any other state, local jurisdiction, the United States, any territory of the United States, any federal or military reservation, or the District of Columbia which is the same as, or equivalent to, an offense specified in the laws of this State.

(b) This section shall apply to any offense or sentencing provision defined in this Code unless the statute defining such offense or sentencing provision or a statute directly related thereto expressly provides that this section is not applicable to such offense or sentencing provision. (74 Del. Laws, c. 62, § 1.)

### § 4216. Transition provisions.

(a) Where an inmate is serving a sentence to Level V (incarceration) imposed not under the Truth in Sentencing Act of 1989 and receives a subsequent sentence to Level V under the provisions of the Truth in Sentencing Act, serving of the earlier sentence shall be suspended and the inmate shall serve the new Level V sentence until it is completed and then resume serving the original sentence.

(b) Where an inmate is serving a "nonmandatory" Level V (incarceration) sentence and is subsequently sentenced to a mandatory term of incarceration, serving of the earlier sentence shall be suspended and the inmate shall serve the new mandatory Level V sentence until it is completed and then resume serving the earlier sentence.

(c) Where an inmate is serving Level V (incarceration) sentence(s) imposed not under the Truth in Sentencing Act of 1989, and is subsequently sentenced to Level V under the provisions of the Truth in Sentencing Act and had less than an aggregate 3 years remaining on the prior sentence(s), the court at the time of sentencing under the Truth in Sentencing Act may in its discretion suspend the remainder of the prior non-Truth in Sentencing Level V sentence(s), unless such sentence was a statutory mandatory term.

(d) Any individual convicted of a crime on or after January 1, 1990, which crime occurred prior to June 30, 1990, may elect to be sentenced under the provisions of the Truth in Sentencing Act of 1989 rather than under the prior provisions of this title. (67 Del. Laws, c. 130, § 14; 67 Del. Laws, c. 350, §§ 3, 28.)

### § 4217. Jurisdiction over sentence retained.

(a) In any case where the trial court has imposed an aggregate sentence of incarceration at Level V in

Exhibit Page 8ª

## SUMMARY OF ARGUMENT

I.    DENIED.    There was no illegality in Raymond O. Demby,
Jr.'s May 9, 1996 sentence for cocaine delivery. (B-6-8). The State
was not required to seek sentencing under 16 Del. C. § 4751(d) as
Demby argues.  It was the State's prerogative to forego attempting
to show Demby was a non-addict drug dealer as required by 16 Del. C.
§ 4751(d), and merely seek enhanced Superior Court sentencing for a
subsequent drug offense under the then existing provisions of 16
Del. C. § 4763(a)(3)(Repl. 1995). Demby qualified for enhanced
sentencing in 1996 because of his September 11, 1989 prior New
Castle County Superior Court conviction for possession with intent
to deliver in Cr. A. No. IN 89-04-0094. (B-26-29).  Demby's 1996
mandatory sentence of 15 years Level V imprisonment was the
statutory minimum sentence under 16 Del. C. § 4763(a)(3), and Demby
could have received a statutory maximum prison term of 99 years for
his second drug offense. (B-30-32).

Exhibit 9

Westlaw.

285 A.2d 807
285 A.2d 807
**(Cite as: 285 A.2d 807)**

**MHU
Law Library**

Page 1

▷

Supreme Court of Delaware.
John Richard HAMILTON, Defendant Below,
Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
Dec. 16, 1971.

Appeal from ruling of the Superior Court refusing to reduce sentence. The Supreme Court, Carey, J., held that where defendant was originally indicted for assault with intent to commit murder, and conferences between opposing attorneys resulted in agreement to plea of simple assault, and State then filed new information charging assault under statute authorizing imprisonment for such term as court, in its discretion, might determine, and defendant entered plea of guilty thereto, statute prescribing maximum incarceration period of 3 years for assault limited the sentence to be imposed, and 20-year sentence was invalid.

Sentence reversed and case remanded.

Wolcott, C.J., dissented and filed opinion.

West Headnotes

**[1] Criminal Law 110 ⚖=10**

110 Criminal Law
    110I Nature and Elements of Crime
        110k8 Application and Operation of Common Law
            110k10 k. Application in General. Most Cited Cases
Purpose of statute authorizing court in its discretion to prescribe amount of fine or term of imprisonment for assault, battery, cheat, conspiracy, nuisance or other common-law offense for which punishment is not specifically prescribed by statute is to make it clear that all common-law offenses, not expressly covered by statute, are still crimes in the state. 11 Del.C. § 105.

**[2] Sentencing and Punishment 350H ⚖=117**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(E) Factors Related to Offender

            350Hk117 k. Other Offender-Related Considerations. Most Cited Cases
                (Formerly 110k980(1))
Fact that guilt is established by a plea, rather than a verdict, does not authorize a greater sentence than the statute permits.

**[3] Statutes 361 ⚖=223.1**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k223 Construction with Reference to Other Statutes
                361k223.1 k. In General. Most Cited Cases
Where statutes conflict, it is duty of court to harmonize them if it can reasonably be done.

**[4] Statutes 361 ⚖=223.4**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k223 Construction with Reference to Other Statutes
                361k223.4 k. General and Special Statutes. Most Cited Cases
In case of conflict, specific statute prevails over the general.

**[5] Assault and Battery 37 ⚖=100**

37 Assault and Battery
    37II Criminal Responsibility
        37II(C) Sentence and Punishment
            37k100 k. In General. Most Cited Cases
Where defendant was originally indicted for assault with intent to commit murder, and conferences between opposing attorneys resulted in agreement to plea of simple assault, and State then filed new information charging assault under statute authorizing imprisonment for such term as court, in its discretion, might determine, and defendant entered plea of guilty thereto, statute prescribing maximum incarceration period of 3 years for assault limited the sentence to be imposed, and 20-year sentence was invalid. 11 Del.C. § § 105, 577, 3707; Superior Court Rules, Criminal rule 35, Del.C.Ann.

**[6] Criminal Law 110 ⚖=1134(8)**

Exhibit 10

Page 2

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110k1134 Scope and Extent in General
                110k1134(8) k. Nature of Decision
Appealed from as Affecting Scope of Review. Most
Cited Cases

(Formerly 110k134(8))

Where defendant convicted on plea of guilty to
assault was not charged with a battery, reviewing
court could not consider battery in determining
whether denial of petition for reduction of 20-year
sentence was an abuse of discretion. 11 Del.C. § §
105, 3707.

**\*807** Upon appeal from the Superior Court. Reversed
and remanded.

Bernard Balick, Asst. Public Defender, Wilmington,
for defendant below, appellant.

John P. Daley, Deputy Atty. Gen., Wilmington, for
plaintiff below, appellee.

WOLCOTT, C.J., and CAREY and HERRMANN,
JJ., sitting.

CAREY, Justice (for the majority):
John Richard Hamilton has appealed from a ruling of
the Superior Court refusing**\*808** to reduce a sentence
of twenty years imprisonment which that Court had
imposed after a plea of guilty to an assault, which is a
misdemeanor.    At the time of this offense, the
appellant was on parole from a previous sentence of
ten years imprisonment for robbery.

The facts are these: The appellant was repairing some
furniture for a female friend at her home.  For no
apparent reason, he suddenly hit her with a hammer
which he was then using.  He then left the scene in
her car, but after proceeding a few miles, he stopped
and called his probation officer, who came to meet
him and accompanied him to a police station, where
he was placed under arrest.  The victim was badly
injured, and now has a soft area in her skull; she must
wear a football helmet since even a mild impact upon
the injured area could cause her death.

The appellant claims that he has no recollection of
the attack; that he recalls working on the furniture,
but does not remember striking the blow or driving
away in the car.  He states that he suddenly realized,
when he was several miles away, that he was driving
the lady's car and, thinking that he might be accused

of having done something wrong which would
constitute a violation of his parole, he promptly
stopped at a telephone booth and called the parole
officer.

The appellant was indicted for an assault with intent
to commit murder, under 11 Del.C. s 577, which is a
felony.  Conferences between the opposing attorneys
resulted in an agreement to a plea of simple assault.
The State then filed a new information charging an
assault under 11 Del.C. s 105, and appellant entered a
plea of guilty thereto.  At the time of sentencing, the
Deputy Attorney General explained to the Court that
he had agreed to accept the plea to this lesser charge
because of his doubt of the State's ability to prove an
intent to murder.

[1] Soon after imposition of the 20 year sentence, the
appellant filed a petition for reduction thereof under
Rule 35 of the Superior Court Rules of Criminal
Procedure.  The Court below denied the petition and
this appeal ensued, on the ground that the denial was
an abuse of discretion.

11 Del.C. s 105 reads as follows:
'Whoever commits or is guilty of an assault, battery,
cheat, conspiracy, nuisance or any other offense
indictable at common law for which punishment is
not specifically prescribed by statute shall be fined in
such amount, or imprisoned for such term, or both, as
the court, in its discretion, may determine.'

This statute has been a part of the Delaware law for at
least 150 years.  Its purpose is to make clear that all
common-law offenses, not expressly covered by
statute, are still crimes in this state. Steele v. State,
Del.Supr., 2 Storey 5, 151 A.2d 127 (1959).  As at
common law, the sentence to be imposed is
discretionary, but this Court may review the denial of
a motion under Superior Court Rule 35 for reduction
thereof to determine whether there has been an abuse
of discretion. Hinckle v. State, Del.Supr., 189 A.2d
432 (1963).

In Hinckle, supra, this Court held that discretion was
abused and error was committed when the sentencing
Judge refused to give consideration to the
arrangement made between the State and the
defendant whereby the charge was reduced to a lesser
offense in consideration of the guilty plea. This Court
then stated:
'Furthermore, we have no doubt, efficiency in
administering the criminal laws oftentimes makes it
desirable for the State to accept pleas to lesser
offenses. Obviously, the ability of the State to do this

would be materially hampered, if not ended, if the prisoners understood that in so agreeing they ran the not remote risk of receiving a sentence greatly in excess of the maximum sentence of the crime for which they were originally charged.'

In the present case, the sentence in fact amounts to a rejection of the arrangement *809 made, although the record shows good reason for that arrangement. The State conceded that there was ample cause seriously to doubt whether a jury would find an intent to murder.

[2] 11 Del.C. s 577, upon which the original indictment of assault with intent to murder was founded, provides a maximum penalty of twenty years imprisonment. 11 Del.C. s 3707 permits the jury to acquit of any felony which involves an assault, and return a verdict of simple assault, if the evidence justifies such finding, in which event the maximum penalty shall be three years imprisonment.<sup>FN*</sup> Of course, the present matter could have been handled by the procedure of having the defendant, with consent of the State, enter a plea of guilty to simple assault upon the indictment; there was really no necessity to file a new information. Superior Court Criminal Rule 31. If this procedure had been followed, it would seem clear that the maximum permissible penalty would have been the three-year period provided in s 3707. The fact that guilt is established by a plea, rather than a verdict, does not authorize a greater sentence than the statute permits. No reason has been given to indicate why this procedure was not followed. The record contains nothing to indicate a deliberate intention to evade the limitation of s 3707; likewise, there is nothing to suggest that the use of this procedural device was a part of the bargain made. In any event, the net result is that not only had the appellant received no benefit from his bargain, he has instead received the maximum penalty for the felony originally charged, despite the State's admitted doubt concerning the proofs, its express agreement to accept the lesser plea, and the Court's acceptance thereof.

> FN* 11 Del.C., s 3707, also more than a century old, provides:

'Upon the trial of any person for any felony whatever, where the crime charged includes an assault against the person, the jury may acquit of the felony and find a verdict of guilty of assault against the accused, if the evidence warrants such finding. When such verdict is found, the court may fine the

person, so found guilty of an assault, not more than $300 and imprison him not more than three years. Nothing in this section shall be construed so as to apply to capital cases.'

[3][4] We think that the penalty limitation of s 3707 is not confined to cases in which a defendant actually goes to trial on the felony charge and is found guilty by the jury of the lesser offense. Surely, it would be applicable to a case where jury trial is waived and the assault verdict is reached by the court. The crime is precisely the same whether guilt is determined under s 105 or s 3707; neither statute classifies assaults into different categories such as simple and aggravated assaults. We cannot believe that the Legislature intended to establish different maximum sentences for the same offense under the two statutes. Where statutes conflict, it is our duty to harmonize them if we reasonably can. In so doing, the specific prevails over the general.

[5] In our opinion, s 3707 is a limitation upon s 105 in a case such as this. The only logical and consistent conclusion is that the Legislature, by the express limitation contained in s 3707, has manifested a clear and unequivocal intent to establish a maximum incarceration period of three years for the lesser offense of assault when, as here, the original charge was a felony including an assault, regardless of whether the conviction is the result of the verdict of jury or judge, or of a plea, and regardless of whether the conviction is based upon s 105 or s 3707. The sentence here imposed exceeds that maximum and cannot be permitted to stand.

[6] Under the facts of this case, it seems apparent that, if the appellant was guilty of an assault, he was also guilty of *810 a battery. He was not charged with a battery, however. We cannot include this additional offense in our consideration, but must deal with the case as it comes to us.

The sentence must be reversed, and the case remanded with instructions to strike the prior sentence and to resentence the appellant in accordance herewith. Nothing herein said is intended to require the new sentence to run concurrently with any time remaining to be served for the robbery conviction.

WOLCOTT, Chief Justice (dissenting):

I do not agree with the conclusion of the majority that the sentence to be imposed upon this appellant is limited by the three-year maximum permitted by 11

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4

Del.C. s 3707.

The appellant in fact plead guilty under 11 Del.C. s 105 to assault which has no limitations upon the sentence to be imposed. In Steele v. State, 2 Storey 5, 151 A.2d 127 (1959), we held 11 Del.C. s 105 to be constitutional, and in Hinckle v. State, 6 Storey 35, 189 A.2d 432 (1963), we held that this Court has no jurisdiction to review an allegedly excessive sentence which falls within the statutorily prescribed limit. The sentence imposed in this case is of that class.

Under the facts of this case the majority thinks the result is an anomaly, but that does not mean it is illegal. As a matter of fact, the difficulty seems to stem from the failure of 11 Del.C. s 105 to distinguish between aggravated assault and simple assault. The statute simply lumps them together. It is apparent that this appellant committed an aggravated assault and was sentenced for it.

I would affirm the sentence and suggest to the General Assembly that it give consideration to clarifying the law in this field. As we pointed out in Cannon v. State, 5 Storey 597, 196 A.2d 399 (1963), the prescribing of penalties for crime is the province of the General Assembly, not the Courts.

Del. 1971.
Hamilton v. State
285 A.2d 807

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

852 A.2d 907 (Table)

852 A.2d 907 (Table), 2004 WL 1535805 (Del.Supr.)
**Unpublished Disposition**

**(Cite as: 852 A.2d 907, 2004 WL 1535805 (Del.Supr.))**

**H**
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.
Jamar L. CAMPBELL, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 91,2004.**

Submitted April 29, 2004.
Decided June 18, 2004.

**Background:** Following appellate affirmance of his conviction of possession of cocaine with intent to deliver and possession of cocaine within 300 feet of a park, and his receipt of enhanced mandatory sentence of 15 years' incarceration, movant sought to correct sentence. The Superior Court, New Castle County, denied motion, and movant appealed.

**Holding:** The Supreme Court held that state was not required to demonstrate that defendant was non-addict prior to imposition of enhanced mandatory sentence.
Affirmed.

West Headnotes

**Controlled Substances ⊜100(2)**
96Hk100(2) Most Cited Cases
State was not required to demonstrate that defendant convicted of possession of cocaine with intent to deliver and possession of cocaine within 300 feet of a park was a non-addict, prior to imposition of 15-year enhanced mandatory sentence, where defendant was convicted for second offense. 16 Del.C. § 4763(a).
Court Below --- Superior Court of the State of Delaware, in and for New Castle County, Cr. A.

Nos. IN99-12-1779; 1780.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

ORDER
**1 This 18th day of June 2004, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:

(1) The defendant-appellant, Jamar L. Campbell, filed an appeal from the Superior Court's February 10, 2004 order denying his motion to correct sentence pursuant to Superior Court Criminal Rule 35(a). The State of Delaware has moved to affirm the Superior Court's judgment on the ground that it is manifest on the face of Campbell's opening brief that the appeal is without merit. [FN1] We agree and AFFIRM.

FN1. Supr. Ct. R. 25(a).

(2) In March 2001, Campbell was found guilty by a Superior Court jury of Possession of Cocaine with Intent to Deliver and Possession of Cocaine Within 300 Feet of a Park. Because this was Campbell's second conviction of Possession with Intent to Deliver, he was sentenced to a mandatory term of 15 years incarceration at Level V. [FN2] Campbell's convictions and sentences were affirmed by this Court on direct appeal. [FN3]

FN2. Del.Code Ann. tit. 16, § 4763(a) (2003).

FN3. *Campbell v. State,* Del.Supr., No. 388, 2001, Walsh, J. (June 27, 2002).

(3) In his appeal, Campbell claims that his enhanced sentence was illegal because the prosecution did not provide proof at a hearing that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

852 A.2d 907 (Table)

Page 2

852 A.2d 907 (Table), 2004 WL 1535805 (Del.Supr.)
**Unpublished Disposition**

**(Cite as: 852 A.2d 907, 2004 WL 1535805 (Del.Supr.))**

he was a nonaddict, as was required under Del.Code Ann. tit. 16, § 4751(d).

(4) The Delaware criminal statutes provide two alternative sentencing schemes for defendants convicted for the second time of Possession With Intent to Deliver. [FN4] Under Del.Code Ann. tit. 16, § 4751(d), the prosecutor may attempt to demonstrate that the defendant is a non-addict and, if successful, the defendant is subject to a minimum mandatory sentence of 12 years Level V incarceration. In the alternative, under Del.Code Ann. tit. 16, § 4763(a), the prosecutor may forego proof that the defendant is a non-addict and simply demonstrate that he has been convicted of the offense for the second time. Under that statute, the defendant is subject to a minimum mandatory sentence of 15 years Level V incarceration. [FN5]

> FN4. *Twyman v. State,* Del.Supr., No. 68, 1997, Hartnett, J. (Nov. 12, 1997).

FN5. Id.

(5) In this case, Campbell was convicted under Section 4763(a), which does not require proof that the defendant is a non-addict. Because the prosecutor was not required under the statute to prove that Campbell was a non-addict, Campbell's claim must fail.

(6) It is manifest on the face of Campbell's opening brief that this appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

852 A.2d 907 (Table), 2004 WL 1535805 (Del.Supr.), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

his argument is that the 12 year minimum mandatory prison term under 16 Del. C. § 4751(d) might possibly have been more appropriate if the State could prove he was a non-addict drug dealer, and the State should have proceeded under § 4751(d) for any enhanced sentencing rather than seeking the 15 year minimum mandatory level V prison term of 16 Del. C. § 4763(a)(3)(Repl. 1995) for a subsequent drug delivery conviction. (B-30-32).

Sections 4751(d) and 4763(a)(3) provide two sentencing alternatives in the event that a defendant, previously convicted of a qualifying drug offense, is subsequently convicted of a violation of 16 Del. C. §§ 4751 or 4761(a)(1). If the State chooses, it can attempt to prove that a defendant is not an addict. If that prosecution is successful, then the defendant is subject to a minimum mandatory 12 year prison term. 16 Del. C. § 4751(d). In the alternative, the State may choose to forgo any effort to show that an accused was a non-addict and simply rely on the fact of his prior conviction for an earlier qualifying drug offense as defined in 16 Del. C. § 4763(a)(3)(Repl. 1995). (B-30-32). The fact of such a prior qualifying conviction is sufficient to establish the defendant's eligibility for an enhanced sentence of 30 to 99 years, with the first 15 years of the sentence being minimum mandatory time. 16 Del. C. § 4763(a)(3)(Repl. 1995).

In Demby's case, the prosecution chose the alternative available under then existing § 4763(a)(3). (B-30-32). Thus, whether or not Demby was a non-addict was immaterial for the

$Exhibit$ #### $12^H$

enhancement sought. The State was not required to establish that Demby was a non-addict in order to obtain an enhanced sentence, as Demby now argues. There was nothing improper in the prosecution's choice in this regard. *See* People v. Valesgas, 113 Cal. Rptr.2d 1, 9-10 (Cal. App. 2001)(citing United States v. Batchelder, 442 U.S. 114, 123-24 (1979)). As Justice Marshall pointed out in Batchelder, 442 U.S. at 123-24, "This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."

The same contention presented by Demby in this appeal was rejected by this Court in Campbell v. State, 2004 WL 1535805 (Del. 2004)(ORDER)(Exhibit E). Campbell controls in this situation and it was entirely up to the State to elect which statutory enhanced penalty sentencing option it wished to pursue in Demby's prosecution. *Id.* at 2 (Exhibit E). *See* Batchelder, 442 U.S. at 124 (the decision as to which charge to pursue generally rests in the prosecutor's discretion). Accordingly, Demby's 1996 sentence is not illegal and his legal contention is meritless. Since this is a repetitive and untimely motion it cannot be considered alternatively as a sentence mediation request under Del. Super. Ct. Cr. R. 35(b), as the trial court presumably did. (B-9).

While the Superior Court's May 9, 1996 Sentence Order (B-6-8) does not specifically identify the prior qualifying drug conviction under Chapter 47 of Title 16 in imposing the enhanced minimum



Exhibit Page 12